**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN JONES** | : | Civil Action No. 25-3354 |
| **101 Kent Way** | : | |
| **West Reading, PA 19611** | : | |
|    **Plaintiff,** | : | |
| | : | |
|   v. | : | **Complaint and Jury Demand** |
| | : | |
| **ENERSYS, INC.,** | : | |
| **2366 Bernville Road** | : | |
| **Reading, PA 19605** | : | |
|    **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Kevin Jones (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against EnerSys, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, EnerSys, Inc. is a battery manufacturer and global leader in

stored energy solutions for industrial applications with a location and headquarters located at 2366 Bernville Road, Reading, PA 19605.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII, the ADEA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging national origin and age discrimination against Defendant.

14. The Complaint was assigned a Charge Number of 530-2024-08240 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated April 1, 2025. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## **MATERIAL FACTS**

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff's national origin is United Kingdom ("UK") and he was born in 1963.

21. In or around September 1994, Plaintiff began working for Hawker Energy Products in the UK.

22. In or around 2003, Defendant acquired Hawker Energy Products and recognized Plaintiff's continuity of service.

23. In or around 2007, Defendant sponsored and funded Plaintiff's relocation from the UK to Defendant's Corporate Headquarters in Reading, PA.

24. In or around 2009, Defendant sponsored and funded Plaintiff's green card approval.

25. In 2019, Defendant sponsored Plaintiff and his family's naturalization process.

26. Plaintiff became the Director of Global Operations Engineering when he relocated to Reading, PA.

27. In or around 2017, Defendant promoted Plaintiff to Senior Director of Global Operations Engineering.

28. As Senior Director of Global Operations Engineering, Plaintiff's responsibilities included analysis of future company expansions; capital planning and actual capital planning; capacity modelling; and process improvement.

29. Plaintiff also had the most experience in the company manufacturing Thin Plate Pure Lead (TPPL) products, Defendant's premier product.

30. Since in or around 2019, Plaintiff has been leading or supporting all of Defendant's expansion work of TPPL technologies including acquisition of new companies and new technologies.

31. In or around 2019/2020, Plaintiff began working for Patrice Baumann.

32. Baumann is of French national origin and was new to the company at the time.

33. Baumann was critical of Plaintiff's work from the beginning and never positively commented on the successes of Plaintiff or his department.

34. Baumann also limited his communications with Plaintiff to monthly reviews and weekly meetings.

35. Repeatedly and from the beginning, Baumann put his biases on display, making several comments towards Plaintiff about being older and being with the company for a long time.

36. In December 2023, Baumann communicated to Plaintiff there would be a reorganization of the Operations Group in January 2024

37. For Plaintiff's department, this meant that the responsibility for TPPL expansion and development work changed.

38. This task became the responsibility of Bertrand Leinart, also of French national origin and younger than Plaintiff.

39. Leinart previously was Plaintiff's subordinate and held the position of Director of Industrial Engineering in Arras, France.

40. He assisted in the cross-training between Defendant's Europe and USA plants.

41. This reorganization also took Leinart out of Plaintiff's subordinate structure and Leinart now reported directly to a Vice President (VP) of Operations.

42. This reorganization resulted in a huge change in responsibility and mission for Plaintiff and his team.

43. The communication regarding this reorganization was limited, poorly planned, and poorly executed.

44. Most of Plaintiff's peers (who were also direct reports of Baumann) were left confused as to what was occurring.

45. The reorganization occurred after only one consultation meeting which was not a consultation meeting but, rather, a meeting to let the department know there would be changes.

46. Baumann and Defendant took away Plaintiff's most meaningful and important line of work and gave it to Leinart, one of Plaintiff's subordinates.

47. In addition, Baumann inserted himself in the bonus allocation process for Plaintiff's department.

48. Baumann, who had final approval related to bonuses, insisted that Leinart receive a significant increase to his potential payout for the coming year, which was approximately five (5) times what was normally considered acceptable.

49. This unusual bonus allocation increase was without merit and discriminatory.

50. Additionally, Leinart was promoted to Senior Director of TPPL Engineering.

51. On or about April 18, 2024, Defendant notified Plaintiff he was being laid off.

52. Defendant communicated to Plaintiff the reason for the layoff was cost reduction, however it was clear, based on Baumann's and Defendant's conduct, that this was nothing more than a pretext for its discrimination based on age and national origin.

53. The national origin and age discrimination continues to be on display at Defendant as Plaintiff's former department now reports to Raphael Germe, Senior Director of EOS.

54. Germe is also of French national origin and is younger than Plaintiff.

55. This further demonstrated that Defendant's decision to lay off Plaintiff was not based on any legitimate or non-discriminatory reason.

56. It was a discriminatory decision based on his age (sixty (60) years-old) and that he is not of French national origin.

57. During his layoff meeting, Michael Lannutti, Global Senior Director of Human Resources, informed that Defendant could only pay Plaintiff a maximum of 26 weeks of severance but would not provide a dollar amount of what that would be.

58. The same occurred with regards to the discussion of honoring a pro-rata bonus payment, which was eventually paid.

59. Lannutti also informed Plaintiff that Defendant would pay the vested shares owed to him, however this was not a new or special consideration as Defendant normally pays out all outstanding shares after an individual reaches sixty (60) years old.

60. Additionally, as a result of the layoff, Plaintiff's share value went from $256,883 to $77,888 (a $178,995 loss in share value).

61. Defendant discriminated against Plaintiff due to his age and national origin in violation of the ADEA, Title VII and the PHRA.

62. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

63. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

64. Plaintiff was born in 1963.

65. Plaintiff was qualified to perform the job.

66. Defendant terminated Plaintiff.

67. Defendant treated younger employees more favorably than Plaintiff.

68. Defendant has no legitimate non-discriminatory reason for its actions.

69. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his age.

72. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III – NATIONAL ORIGIN DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

73. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

74. Plaintiff is a member of protected classes in that his national origin is United Kingdom.

75. Plaintiff was qualified to perform the job.

76. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

77. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

78. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

79. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

80. Defendant terminated Plaintiff.

81. As a result of Defendant's unlawful national origin discrimination, Plaintiff has suffered damages as set forth herein.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – NATIONAL ORIGIN DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

82. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

83. Plaintiff is a member of protected classes in that his national origin is United Kingdom.

84. Plaintiff was qualified to perform the job.

85. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

86. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

87. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

88. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

89. Defendant terminated Plaintiff.

90. As a result of Defendant's unlawful national origin discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Kevin Jones, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADEA, and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                                                                                                                            **RESPECTFULLY SUBMITTED,**

                                                                                                                                            **KOLLER LAW, LLC**

Date: June 30, 2025                        **By:**   */s/ David M. Koller*
                                                                      David M. Koller, Esquire (90119)
                                                                      Jordan D. Santo, Esquire (320573)
                                                                      2043 Locust Street, Suite 1B
                                                                      Philadelphia, PA 19103
                                                                      215-545-8917
                                                                      davidk@kollerlawfirm.com
                                                                      jordans@kollerlawfirm.com

                                                                      *Counsel for Plaintiff*